UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:21-cv-60115-RKA

BIANCA FERNANDEZ,

     Plaintiff,

v.

HOTWIRE
COMMUNICATIONS, LTD.,

     Defendant.

_____/

### DEFENDANT'S MOTION IN LIMINE

Defendant, Hotwire Communications, Ltd., moves the Court *in limine* to: (1) prohibit Plaintiff, Bianca Fernandez, from referencing her allegations that Hotwire obtained a Payroll Protection Program Loan ("PPP Loan"); and (2) limit Plaintiff's alleged damages for back pay and front pay in light of Plaintiff's failure to mitigate, and in support thereof states:

Plaintiff claims that Hotwire terminated her employment, along with that of 33 other employees, on April 3, 2020 at the outset of the COVID-19 pandemic because of discrimination based on age, race, and gender. *See* Amd. Compl. [ECF No. 39]. In opposing Hotwire's Motion for Summary Judgment, Plaintiff argued for the first time that Hotwire obtained a PPP Loan that somehow required Hotwire to re-hire Plaintiff after her termination in order to obtain forgiveness of the loan. [ECF No. 60]. There is no basis in law or fact for Plaintiff's allegations. The Court should prevent Plaintiff from raising this untrue and unfairly prejudicial argument at trial.

Plaintiff seeks damages including back pay but Plaintiff failed to satisfy her duty to mitigate these damages. Plaintiff claims that she searched for alternate employment for several months after her termination from Hotwire. However, Plaintiff refused to produce any evidence

of her job search despite her testimony indicating that such records exist and are easily retrievable. Moreover, Plaintiff admits that she stopped seeking employment at an indeterminate time and instead started working for her boyfriend's company, BCGS Sales & Marketing, LLC ("BCGS"), without earning any income.  Plaintiff further admits that her boyfriend pays for all of her living expenses without paying Plaintiff any compensation for her work on behalf of BCGS.  Plaintiff should not be permitted to recover back pay and front pay against Hotwire simply for allowing her boyfriend to pay for all of her expenses without making any effort to obtain other sources of income that might act as a setoff against these alleged damages.

## MEMORANDUM OF LAW

### I.      Legal Standard

"A trial court has broad discretion in determining the admissibility of evidence; its ruling will not be disturbed on appeal absent an abuse of discretion." *United States v. Petrie*, 302 F.3d 1280, 1285 (11th Cir. 2002) (quotations omitted). A trial court should exclude evidence "where the evidence is clearly inadmissible for any purpose." *Soto v. Geice Indem. Co.*, No. 6:13-cv-181-Orl-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014). Evidence is inadmissible if it is not relevant, constitutes hearsay, or lacks proper foundation. Fed. R. Evid. 402; Fed. R. Evid. 802; *Soto*, 2014 WL 3644247 at *2. And even if relevant, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

### II.     Plaintiff's allegations regarding Hotwire's PPP Loan are unfairly prejudicial because they are inaccurate, irrelevant, and inappropriate.

The Court should prohibit Plaintiff from presenting argument regarding Hotwire's alleged PPP Loan because Plaintiff's argument is not relevant and is based entirely on hearsay from Plaintiff's

2

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

counsel.  Even if Plaintiff could point to admissible evidence, the probative value of such evidence is outweighed by the unfair prejudice to Hotwire, confusion of issues, and likelihood that it will mislead the jury.  Plaintiff's argument regarding Hotwire's PPP Loan is factually and legally incorrect; Plaintiff waited until after the close of discovery to raise the issue; Plaintiff has not disclosed any evidence in support of the argument; and Plaintiff's actions reveal that this argument is intended solely to disparage Hotwire in an effort to unfairly prejudice the Court and the jury.

In response to Hotwire's Motion for Summary Judgment, Plaintiff argued for the first time that Hotwire obtained a PPP Loan and had that Loan forgiven by the federal government in a manner that required Hotwire to rehire Plaintiff.  *See* [ECF No. 60] p. 1-4.  Plaintiff's argument is based entirely on a sworn declaration submitted by her legal counsel in this action, G. Ware Cornell, Jr. Esq., in which Mr. Cornell claims to have been informed of Hotwire's PPP Loan by an unnamed witness, which he then followed up with "an open internet search" of an undisclosed website.  [ECF No. 58-4] ¶ 19.  Mr. Cornell relays that "the present status [of Hotwire's PPP Loan is] 'forgiven **or repaid**'."  *Id*.  (emphasis added).

Despite Mr. Cornell's acknowledgment that he does not know whether the PPP Loan was forgiven (as opposed to having been repaid), Plaintiff nevertheless argues that Hotwire had the loan forgiven in a manner that required the company to rehire Plaintiff.  [ECF No. 60].  There is no factual or legal support for Plaintiff's repeated assertion that Hotwire violated federal regulations by having the PPP Loan forgiven without rehiring Plaintiff.

As an initial matter, Plaintiff's claim that Hotwire should have rehired her after her termination has no relevance to this case, which is about Plaintiff's claim that her April 3, 2020 termination was based on discrimination.  The fact that Hotwire chose not to rehire Plaintiff after

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

terminating her is no more relevant in this case than it is in any other employment discrimination case. Hotwire's PPP Loan does nothing to change that.

Plaintiff's decision to withhold this argument until after the close of discovery, by itself, is sufficient reason to prohibit Plaintiff from presenting the argument at trial.  Plaintiff's "trial by ambush" tactics prevented Hotwire from conducting any discovery into this issue or presenting any evidence to controvert Plaintiff's baseless claim.

Additionally, Plaintiff does not even claim to possess any evidence in support of her argument. While Plaintiff *argues* that Hotwire's PPP Loan was forgiven, Mr. Cornell's declaration (the only evidence supporting the argument) acknowledges that the PPP Loan was "forgiven **or repaid**."  Mr. Cornell wisely stops short of representing under oath that the PPP Loan was forgiven because, in reality, the PPP Loan was repaid with interest, not forgiven.  Plaintiff's argument overreaches the self-serving declaration provided by her own attorney.

Mr. Cornell's declaration is based entirely on hearsay.  Further compounding the prejudice to Hotwire, Plaintiff refuses to produce the hearsay evidence she claims to possess.  For example, Plaintiff has yet to identify the unnamed witness referenced in Mr. Cornell's declaration.  Nor has Plaintiff produced (or even identified) documents from the "open internet search" that Mr. Cornell purportedly performed.   Mr. Cornell states that he "believe[s] this highly relevant information is readily reduced to admissible evidence at trial by subpoena to the City National Bank," but Plaintiff has not disclosed any effort to serve such a subpoena or even requested an extension of the long-passed discovery deadline.

Mr. Cornell made himself a fact witness by holding himself out as the sole identifiable source of information regarding Plaintiff's PPP Loan argument.  This would appear to disqualify Mr. Cornell from acting as Plaintiff's counsel at trial.  FL ST BAR Rule 4-3.7 ("A lawyer shall not act as advocate

at a trial in which the lawyer is likely to be a necessary witness on behalf of the client…").  Of course, Mr. Cornell has given no indication that he intends to withdraw as Plaintiff's counsel.  To the extent that Plaintiff insists on proceeding with this argument, Hotwire should be granted leave to take Mr. Cornell's deposition and conduct further discovery into this issue.

Plaintiff is also wrong on the law.  Even if Hotwire's PPP Loan was forgiven (which it was not), Plaintiff fails to cite any authority for her claim that obtaining loan forgiveness required Hotwire to rehire her. This is because there is no such authority.  To the contrary, a reduction in an employer's headcount only proportionally reduces the amount of loan forgiveness available to that employer.  *See* 15 U.S.C. § 636m(d)(2).  Nothing in any PPP Loan regulations requires an employer that obtains a PPP Loan to rehire terminated employees as Plaintiff claims.  The fact that Plaintiff's argument is legally incorrect further emphasizes the argument's irrelevance and unfair prejudice.

Finally, Plaintiff's conduct reveals that she intends to use this argument regarding Hotwire's PPP Loan solely for the purpose of casting a disparaging, prejudicial cloud over Hotwire and its employees.  In her sole filing raising this argument, Plaintiff makes numerous disparaging jabs at Hotwire without any regard to their lack of factual or legal support.  For example, Plaintiff claims that "[i]t is also unclear how a program intended for employers of five hundred or less resulted in a maximum grant to an employer of 1,104.  Perhaps we shall learn at trial."  [ECF No. 60], p. 4, n. 2.  In reality, basic legal research reveals that Hotwire's headcount did not preclude it from obtaining a loan because it meets the Small Business Administration's standard for the telecommunications industry (which is 1,500 employees).  *See* 15 U.S.C. § 636(a)(36)(D)(i)(II).  This easily ascertainable legal reality did not stop Plaintiff from implying in a filing with this Court that

Hotwire acted somehow nefariously and it will not stop Plaintiff from engaging in the same smear tactics in front of a jury.[1]

Hotwire should not be forced to repeatedly correct Plaintiff's factual and legal misstatements, not least of all because Hotwire has been denied an opportunity for discovery into this issue.  Moreover, Plaintiff has not (and cannot) identify any admissible factual or legal support for her argument.  Finally, Plaintiff has made clear that her intent is simply to prejudice the jury against Hotwire by making these allegations regardless of their lack of support.  Plaintiff's baseless accusations will have far greater effect than any possible denial because no amount of legal exposition can outweigh such prejudicial allegations.

Thus, even if Hotwire's PPP Loan was somehow relevant (which it is not), and even if Plaintiff's argument was supported by admissible evidence (which it is not), the probative value of the argument is outweighed by the substantial unfair prejudice to Hotwire.  Accordingly, the Court should prohibit Plaintiff from making any reference to Hotwire's PPP Loan at trial.

### III.   Plaintiff's entitlement to back pay damages, if any, is limited by Plaintiff's failure to mitigate such damages.

Title VII provides for back pay as a form of damages and also imposes a duty on plaintiffs to mitigate such damages.  "[A]n award of back pay is intended to make the claimant whole, not to confer a windfall." *Richardson v. Tricom Pictures & Productions, Inc.*, 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004), aff'd, 183 Fed. Appx. 872 (11th Cir. 2006) (quotation omitted).  Towards

---

[1] Indeed, Plaintiff's Response brief is replete with disparaging and slanderous attacks on Hotwire and its employees. *See, e.g.*, Response at p. 3 ("Hotwire was required to rehire workers laid off between February 15, 2020 and April 26, 2020."); p. 4 ("[Hotwire's] conduct seemed to be deliberately indifferent to governmental regulations."); p. 16 (**"Presumably, Ms. Kanchak [sic] should have been the person who ordered the rehire of 34 people after her employer received $10,000,000.00 which included a promise to the federal government and American taxpayers to 'quickly rehire' those laid off because of COVID-19. … Ms. Kanchak's [sic] failure to do that job means she will do or say anything for Hotwire.**"); p. 18 ("[Hotwire] flagrantly violated the law and dug itself in deeper …."). Plaintiff's personal attacks on Ms. Konchak's character are particularly troubling given Mr. Cornell's tacit acknowledgment that he did not know whether the PPP Loan was forgiven instead of repaid.

this end, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g)(1). Therefore, "in calculating a back pay award, the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Richardson*, 334 F. Supp 2d at 1310. "[T]he claimant must make a reasonable and good-faith effort to mitigate her damages." *Id*. (citing *Giles v. General Elec. Co.*, 245 F.3d 474, 492 (5th Cir.2001) ("Because it is an equitable remedy, back pay is subject to a duty to mitigate damages.") (additional citations omitted)).

"[A] claimant must mitigate her damages by seeking employment 'substantially equivalent' to the position she was denied." *Id*. (quoting *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F.Supp.2d 1364, 1378 (S.D.Fla.1998)). "'Substantially equivalent employment' is employment that affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated.'" *Id*. "If an employee suffers a willful loss of earnings, however, the employer's backpay liability is tolled." *Id*. (citations omitted).

Here, Plaintiff claims that she sought alternative employment to satisfy purported requirements for obtaining unemployment benefits before she gave up her job search and began working for her boyfriend's company, BCGS. Plaintiff's Deposition Transcript [ECF No. 55-1] 44:8-45:2. Plaintiff testified at deposition that she could not estimate when she stopped applying for jobs and started working for BCGS but that it could have been at any point starting the day after her termination. *Id*. at 53:18-54:22; 59:14-19; 65:15-24. Plaintiff also testified that her boyfriend pays all of her living expenses and even granted Plaintiff a $50,000 ownership interest in BCGS. *Id*. at 35:10-19; 45:10-15; 62:22-25. Plaintiff testified that she had yet to earn any

income from BCGS, which she used to sell various items on the Amazon marketplace.  *Id*. at 47:12-18; 50:19-21.  During her deposition, Plaintiff testified that she does not know whether she has any title or official role with the company and could not even estimate the amount of BCGS's sales revenue, the approximate amount of sales, or any other business information.  *Id*. at 48:3-10; 50:3-8; 60:5-20; 61:25-62:5.  Plaintiff explained that she is "hoping to build this business," but when asked whether she has any projections for doing so Plaintiff testified:

> A: Do I have a projection? Or, a goal? I do not know. I mean, a projection – I mean, I want to make a million.  But, I do not know if that is even – if that is possible. But, I just – I want to make at least 100,000.

*Id*. at 66:3-7.  When asked if she had any type of business plan to accomplish that goal, Plaintiff testified she did not know and that her boyfriend "takes care of all the business." *Id*. at 66:13-14, 22-24.

As an initial matter, Plaintiff's only claimed reason for her job search--to satisfy a requirement to obtain unemployment benefits from the State of Florida—did not exist during the relevant period.  *See* Florida Department of Economic Opportunity Emergency Orders 20-011, 20-014, 20-016, 20-019, 20-020, 20-024, 20-028, 20-034, 20-040, 20-055, 20-060, 21-005, and 21-015 (suspending the "actively seeking work" requirement of section 443.091(1)(d), Florida Statutes, for various periods of time).   Plaintiff could not recall a single employer to which she applied but claimed that every application she submitted was summarily rejected.  Plaintiff maintains that she has no record of ever applying for any jobs.  However, Plaintiff claims that she submitted such applications through the LinkedIn social network, which automatically preserves such records.  Indeed, LinkedIn provides simple, easy-to-follow instructions for accessing these records, which Hotwire's counsel provided to Plaintiff's counsel in an effort to obtain these records.  *See https://www.linkedin.com/help/linkedin/answer/a512329/view-jobs-you-ve-applied-*

*for-on-linkedin?lang=en*.   Nevertheless, Plaintiff has never produced any evidence of her purported job search.

Plaintiff's inability to provide any evidence of her job search, or even a cognizable rationale for her search, demonstrates that she failed to "make a reasonable and good-faith effort to mitigate her damages." *Richardson*, 334 F. Supp 2d at 1310.  Plaintiff's failure to identify the employers to which she allegedly applied also makes it impossible to determine whether Plaintiff sought "substantially equivalent employment" to the position she held at Hotwire.

Even if Plaintiff had initially engaged in good faith efforts to find substantially equivalent employment, Plaintiff admits that she ceased those efforts and claims that she instead began working for her boyfriend's company by selling merchandize online.  However, again, Plaintiff failed to produce any evidence of her efforts.  Plaintiff and her boyfriend responded to Hotwire's subpoena to BCGS by refusing to produce any documents evidencing the amount of the company's sales revenue, expenses, or net income.  During her deposition, Plaintiff testified that she had no idea when the company might become profitable.

"A self-employed person is 'employed' for the purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment." *Joe's Stone Crab, Inc.*, 15 F. Supp. 2d at 1379. (S.D. Fla. 1998).  "[U]nprofitability during the initial stages of operation will not, by itself, establish that the enterprise was an unreasonable method of mitigating damages." *Id*. (citing *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1472 (11th Cir. 1985) (claimant entitled to back pay for six to eight months spent initiating own business without remuneration)).  Case law recognizes that few activities are more American than starting one's own business.  However, Title VII does not require Hotwire to bear the expense of indefinitely supporting Plaintiff in her endeavors, particularly given Plaintiff's lack of any

knowledge about her business' finances and inability to provide any information about when her business might become profitable.  This is not the entrepreneurship that makes America's economy the greatest in the world.

Accordingly, Plaintiff is not entitled to any back pay damages (even if she prevails on her claims) because Plaintiff failed to mitigate her damages as evidenced by Plaintiff's refusal to produce any evidence of her purported job search through LinkedIn.  Even if Plaintiff is permitted to seek back pay damages during the period of her LinkedIn job search, the Court should limit such damages to that period and cut off Plaintiff's damages as of the date when Plaintiff started working for BCGS because Plaintiff's unprofitable self-employment is not a reasonable, good faith effort to mitigate her damages.

## **CONCLUSION**

The Court should not permit Plaintiff to raise her defamatory argument regarding Hotwire's PPP Loan at trial.  Plaintiff's argument is not relevant, is not supported by admissible evidence, and is unfairly prejudicial to Hotwire.  Plaintiff's allegations regarding Hotwire's PPP Loan are based entirely on a declaration from her own attorney, which in turn is based solely on hearsay.  Plaintiff failed to raise this argument prior to the close of discovery, further prejudicing Hotwire.

The Court should also limit Plaintiff's entitlement to back pay damages (if any) because Plaintiff failed to satisfy her duty to mitigate such damages.  Plaintiff refuses to produce any evidence of her alleged search for alternative employment, despite having testified that she conducted her search through the LinkedIn platform, which preserves these records.  Even if Plaintiff is permitted to seek back pay for the period when she was seeking alternate employment, Plaintiff admits that she ceased doing so in order to become self-employed with her boyfriend's

company.  Plaintiff admits that she has no knowledge about the company's business information and that she has no business plans for making the company profitable.  Thus, Plaintiff's self-employment is not a reasonable, good faith effort to mitigate her damages and the Court should not force Hotwire to bear the expense of supporting Plaintiff's lackadaisical endeavors indefinitely.

WHEREFORE Defendant, Hotwire Communications, Ltd., respectfully requests that the Court enter an Order granting this Motion, prohibiting Plaintiff from referencing Hotwire's PPP Loan at trial, limiting Plaintiff's back pay damages (if any) due to Plaintiff's failure to mitigate, and granting such further relief as the Court deems just and appropriate.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(3), counsel for the movant has conferred with all parties or who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so except that Plaintiff's counsel does not object to an extension of the deadline for filing the instant Motion.

Dated: April 25, 2022                    Respectfully submitted,

                                        WEISS SEROTA HELFMAN
                                        COLE & BIERMAN, P.L.
                                        Counsel for Defendant
                                        200 East Broward Blvd., Suite 1900
                                        Fort Lauderdale, FL 33301
                                        Telephone:  (954) 763-4242
                                        Facsimile:  (954) 764-7770

                                        By: /s/ Michael S. Kantor
                                            Michael S. Kantor, Esq.
                                            Florida Bar No. 90472
                                            Email: mkantor@wsh-law.com
                                            Samantha W. Soto, Esq.
                                            Florida Bar No.: 107117
                                            Email: ssoto@wsh-law.com

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic filing on April 25, 2022 on all counsel or parties of record on the Service List below.

## SERVICE LIST

BIANCA FERNANDEZ v. HOTWIRE COMMUNICATIONS, LLC
Case No. 0:21-cv-60115-RKA
United States District Court
Southern District of Florida

G. Ware Cornell, Jr.
Email: ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, FL 33331
Telephone: 954-641-3441

Suzanne A. Singer
Email: ssinger@rumberger.com
**RUMBERGER KIRK & CALDWELL**
80 SW 8 ST, Suite 3000
Miami, Fla. 33130
Telephone: 305-358-5577
*Counsel for Plaintiff, Bianca Fernandez*

Michael S. Kantor, Esq.
Email: mkantor@wsh-law.com
Secondary: mboschini@wsh-law.com
Samantha W. Soto, Esq.
Email: ssoto@wsh-law.com
Secondary: lpimienta@wsh-law.com
**Weiss Serota Helfman Cole & Bierman, P.L.**
200 E. Broward Blvd., Suite 1900
Ft. Lauderdale, FL 33301
Telephone: 954-763-4242
Fax: 954-764-7770
*Counsel for Defendant,*
*Hotwire Communications, LLC*